Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Southern District of New York                                     1:19-cv-02487

| | |
|---|---|
| Matthew Colpitts, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Blue Diamond Growers, | |
| Defendant | |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Blue Diamond Growers ("defendant") manufactures, distributes, markets, labels and sells almonds purporting to obtain their flavor through actually being smoked, under the Blue Diamond Almonds brand ("Product").

2. The Product is available to consumers from retail and online stores of third-parties and is sold in sizes including 1.5, 6, 14, 16, 25 and 40 OZ.

3. The Product's relevant front label representations include "Blue Diamond Almonds," ""Smokehouse®," "2g Net Carbs," "Smart Eating!" and a picture of the Product.

1



4.      The label makes direct representations that the Product's primary recognizable flavor is due to being smoked, through the statement "Smokehouse®" and the color scheme evocative of the fire used in actual smoking with red and orange-red coloring, such that smoke is reasonably understood by consumers to be its characterizing flavor. *See* 21 C.F.R. § 101.22(i).

5.      Smoking is a method of food preparation (and preservation) where a food is cooked over a fire that containing various kinds of wood chips.

6.      The wood chips provide unique and powerful flavors, based on the type of wood used.

7.      For example, hickory wood chips – from deciduous hardwood trees of the genus Carya – are often used for providing hearty yet sweet flavors to nuts and meat.

8. Where a product designates its characterizing flavor as "smoke" without any qualifying terms – flavor, flavored, natural smoke flavor, artificial smoke flavored – consumers get the impression that its smoke taste is contributed by the food being prepared through actual smoking. *See* 21 C.F.R. § 101.22(i)(1) (describing a food which contains no simulating artificial flavor and not subject to 21 C.F.R. § 101.22(i)(1)(i)-(iii)).

9. Though the term "Smokehouse" has a trademark designation next to it, this fails to put the consumer on notice that the Product is not actually smoked and that its smoke taste is due exclusively to added smoke flavor.

10. There is no reason to expect that because a representation may carry a trademark registration that it should mean the thing described is false or that it is necessarily fanciful.

11. No reasonable consumer would be instinctively distrustful or skeptical of a product labeled "Smokehouse Almonds" such that they would be inclined to verify whether the ingredient list disclosed a "smoke flavor."

12. "Smoked Almonds" that get their smoked flavor from being smoked is not an unheard of or rare delicacy that it would make a reasonable consumer "double check" the veracity of the front label claims.

13. Foods labeled "strawberry shortcake," "Smokehouse almonds" or "apple pie" are expected by consumers to get their flavor from strawberries, actual smoking and apples. *See* 21 C.F.R. § 101.22(i)(1) ("If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla', in letters not less than one-half the height of the letters used in the name of the food, except that…").

14. By not including any qualifying terms preceding, following or in proximity to "Smokehouse," consumers will expect the Product contains sufficient smoke flavor from actually being smoked and does not contain flavors which imitate actual smoking but have no relation to a "Smokehouse."

15. The designation of "NATURAL HICKORY SMOKE FLAVOR" means the flavor imparted to the almonds is not due to them being smoked but actually from added "smoke flavor."

**INGREDIENTS:** ALMONDS, VEGETABLE OIL (CANOLA, SAFFLOWER AND/OR SUNFLOWER), SALT, CORN MALTODEXTRIN, ==NATURAL HICKORY SMOKE FLAVOR==, YEAST, HYDROLYZED CORN AND SOY PROTEIN, NATURAL FLAVORS.

16. Consumers prefer foods that have the characteristics they seek due to their natural production process, i.e., actual smoking, as opposed to the "taste" of being smoked through "smoke flavor," for reasons including nutrition, health and/or the avoidance of additives and highly processed ingredients..

17. Even if consumers were to view the ingredient list, a reasonable consumer would have no reason to know that the listing of "natural hickory smoke flavor" forecloses the possibility the Product was also subject to smoking.

18. However, the Product's taste is not provided through any smoke treatment, despite the front label claim of "Smokehouse®" which is deceptive and misleading to consumers.

19. Competitor smoked almond products are labeled as accurately being flavored by smoke flavor as opposed to being subject to a smoking process.

Planters                                                                 Blue Diamond

            

20. The competitor Planters product is labeled as "Smoked Almonds" but prominently discloses their smoked taste as being due to being "naturally flavored" by natural smoke flavor.

21. Defendant's Product contains no such front label disclosure, causing reasonable consumers will purchase them instead of similar products at their higher premium price.

22. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

5

23. The Product contains other representations which are misleading and deceptive.

24. As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.79 per 1.5 OZ, excluding tax, compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

25. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

26. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

27. Plaintiff Matthew Colpitts is a citizen of New York.

28. Defendant is a California corporation with a principal place of business in Sacramento, Sacramento County, California and is a citizen of California.

29. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

30. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

31. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

32. Plaintiff Matthew Colpitts is a citizen of New York, New York County, New York.

33. Defendant Blue Diamond Growers is a California corporation with a principal place of business in Sacramento, California, Sacramento County.

34. During the relevant statutes of limitations, plaintiff purchased the Product within his district and/or State for personal consumption and/or use in reliance on the representations the Product's smoked taste being the result of actual smoking as opposed to smoke flavor.

## Class Allegations

35. The classes will consist of all purchasers of the Product in New York and the other forty-nine (49) states during the applicable statutes of limitations.

36. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

37. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

38. Plaintiff is an adequate representatives because his interests do not conflict with other members.

39. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

40. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

41. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

42. Plaintiff seeks class-wide injunctive relief because the practices continue.

## New York General Business Law ("GBL") §§ 349 & 350
### (Consumer Protection Statute)

43. Plaintiff incorporates by reference all preceding paragraphs.

44. Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product

7

type.

45.     Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

46.     Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

47.     Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product is smoked and gets its flavor through the smoking process as opposed to having added "smoke flavor."

48.     Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

49.     Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

50.     Plaintiff incorporates by reference all preceding paragraphs.

51.     Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

52.     Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product gets its smoke taste (flavor) from being smoked as opposed to added smoke flavor.

53.     Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

54.     This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or

service type.

55. The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

56. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

57. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

58. Plaintiff incorporates by reference all preceding paragraphs.

59. The Products were manufactured, labeled and sold by defendant and warranted to Plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not, *viz*, were smoked.

60. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

61. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

62. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

63. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years.

64. The Product did not conform to its affirmations of fact and promises due to

defendant's actions and were not merchantable.

65. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

### Fraud

66. Plaintiff incorporates by reference all preceding paragraphs.

67. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Product gets its smoke taste (flavor) from being smoked as opposed to added smoke flavor.

68. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label, when it knew its statements were not true nor accurate.

69. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

70. Plaintiff incorporates by reference all preceding paragraphs.

71. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the

challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   March 22, 2020

          Respectfully submitted,

          Sheehan & Associates, P.C.
          /s/Spencer Sheehan
          Spencer Sheehan
          505 Northern Blvd Ste 311
          Great Neck NY 11021-5101
          Tel: (516) 303-0552
          Fax: (516) 234-7800
          *spencer@spencersheehan.com*
          E.D.N.Y. # SS-8533
          S.D.N.Y. # SS-2056

1:19-cv-02487
United States District Court
Southern District of New York

Matthew Colpitts, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Blue Diamond Growers,

Defendant

Class Action Complaint

```
Sheehan & Associates, P.C.
 505 Northern Blvd Ste 311
  Great Neck NY 11021-5101
      Tel: (516) 303-0552
      Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: March 22, 2020

/s/ Spencer Sheehan<br>Spencer Sheehan