UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                            :

MATTHEW COLPITTS, *individually and on behalf*   :
*of all others similarly situated*,               :
                            :

                  Plaintiff,    :          20 Civ. 2487 (JPC)
                            :

         -v-                     :          <u>OPINION</u>
                            :       <u>AND ORDER</u>

BLUE DIAMOND GROWERS,            :
                            :

                Defendant.   :
                            :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiff Matthew Colpitts brings this putative class action against Defendant Blue
Diamond Growers, in connection with Defendant's sale of a specific variety of almonds featuring
a smoky taste (the "Product"). Plaintiff alleges that the Product's use of the word "Smokehouse®"
and a color scheme evocative of fire on its packaging misleads consumers into thinking that the
almonds were prepared by a natural smoking process, when in fact the Product retains its taste
from added flavors that imitate a smoky flavor. Asserting federal jurisdiction under the Class
Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), Plaintiff brings claims under New
York consumer protection law and common law.

      Defendant moves to dismiss the Complaint on numerous grounds. First, Defendant argues
that Plaintiff has not pleaded an injury-in-fact sufficient to establish standing under Article III of
the United States Constitution for any of his claims. Second, Defendant seeks dismissal of
Plaintiff's claims under New York General Business Law ("N.Y. G.B.L.") §§ 349 and 350, arguing
that Plaintiff fails to adequately plead a purchase, that he improperly seeks to privately enforce
regulations promulgated under the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §
301 *et seq.*, and that no reasonable consumer would interpret the Product's "Smokehouse®"

description and package coloring as meaning that the almonds derive their taste from having been smoked over a fire.  Lastly, Defendant argues that Plaintiff has failed to adequately plead his claims of fraud, negligent misrepresentation, breaches of express and implied warranties, and unjust enrichment under common law.  *See* Dkts. 10, 11, 12.

For the reasons below, the Court concludes that Plaintiff has established Article III standing to seek damages.  Plaintiff's N.Y. G.B.L. §§ 349 and 350 claims survive dismissal because Plaintiff has sufficiently pleaded viable grounds for relief under those Sections, including by plausibly alleging that reasonable consumers could be misled by the Product's labeling.  The Court, however, dismisses Plaintiff's common law claims for failure to state a claim upon which relief may be granted.

## I.  Background

### A.  Factual Allegations

For purposes of the present motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all reasonable inferences in Plaintiff's favor.  *See Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015).  The factual recitation that follows therefore is derived from the Complaint and is assumed true only for the purposes of resolving the instant motion.

Defendant distributes and manufactures smoke-flavored almonds, *i.e.*, the Product.  Dkt. 1 ("Compl." or "Complaint") ¶ 1.  The Product is sold in various sizes, and its packaging features the label "Smokehouse®," among other words, as well as red and red-orange coloring, a color scheme that, according to Plaintiff, is suggestive of fire.  *Id.* ¶¶ 2-4.  The Complaint includes the following picture of the front of the Product's packaging:



*Id.* ¶ 3.   Plaintiff alleges that through these features—the "Smokehouse®" label and the packaging's color scheme—the Product "makes direct representations" that its smoky flavor is the result of the actual process of smoking.   *Id.* ¶ 4.   As alleged, "[s]moking is a method of food preparation (and preservation) where a food is cooked over a fire that contain[s] various kinds of wood chips," with the wood chips "provid[ing] unique and powerful flavors, based on the type of wood used."   *Id.* ¶¶ 5-6.   Plaintiff further alleges that it would not be unreasonable for consumers to expect that the almonds were in fact smoked over a fire: "'Smoked Almonds' that get their smoked flavor from being smoked is not an unheard of or rare delicacy that it would make a reasonable consumer 'double check' the veracity of the front label claims."   *Id.* ¶ 12.   Plaintiff contends that consumers therefore receive the impression that the almonds retain their smoky taste through this process of actual smoking.   *Id.* ¶¶ 8, 14.[1]

---

[1] Plaintiff offers an example of what he deems an appropriate label for smoke-flavored almonds, and includes in the Complaint a picture of the packaging of one of Defendant's competitors, whose label features the words "SMOKED ALMONDS" above "NATURALLY FLAVORED."  Compl. ¶¶ 19-20.

This representation, according to Plaintiff, is misleading because the Product's smoky taste is in fact derived from added smoke flavor, not the aforementioned process of smoking over a fire with wood chips.  *Id.* ¶¶ 15, 18.  To support this contention, the Complaint includes a picture of the ingredients section on the back of the Product's packaging, which lists "NATURAL HICKORY SMOKE FLAVOR" as an ingredient:



*Id.* ¶ 15.

The Complaint also suggests that certain parts of the label fail to put a consumer on notice that the Product is not actually smoked.  The Complaint maintains that the trademark symbol at the end of the word "Smokehouse®" does not cure the misleading nature of the representation, because "[t]here is no reason to expect that because a representation may carry a trademark registration that it should mean the thing described is false or that it is necessarily fanciful."  *Id.* ¶ 10.  Plaintiff also alleges that no reasonable consumer would resort to the ingredients list after reading the "Smokehouse®" label to check whether the almonds had smoke flavor additives, *id.* ¶ 11, and even if one were to, "a reasonable consumer would have no reason to know that the listing of 'natural hickory smoke flavor' forecloses the possibility the Product was also subject to smoking," *id.* ¶ 17.

Plaintiff pleads that, as a result of the Product's allegedly misleading labeling, reasonable consumers will purchase the Product, instead of similar products, at a higher price.  *Id.* ¶ 21.  This is because "[c]onsumers prefer foods that have the characteristics they seek due to their natural production process, i.e., actual smoking, as opposed to the 'taste' of being smoked through 'smoke

4

flavor,' for reasons including nutrition, health and/or the avoidance of additives and highly processed ingredients." *Id.* ¶ 16.   Plaintiff further alleges that, during the relevant statute of limitations period and while in this District, he purchased the Product "for personal consumption and/or use in reliance on the representations the Product's smoked taste being the result of actual smoking as opposed to smoke flavor." *Id.* ¶ 34.   Plaintiff alleges that the Product "is sold at a premium price, approximately no less than $2.79 per 1.5 OZ, excluding tax, compared to other similar products represented in a non-misleading way," *id.* ¶ 24, and had he and other members of the putative class known that the Product's taste was not the result of any smoked treatment, they would not have bought the Product or would have paid less for it, *id.* ¶ 22.

## B.  Procedural Background

Plaintiff filed the Complaint on March 22, 2020, asserting jurisdiction under the CAFA, 28 U.S.C. § 1332(d)(2).[2]   Compl. ¶¶ 25-28.   The Complaint pleads claims under N.Y. G.B.L. §§ 349 and 350, as well as common law claims of fraud, negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment.[3]   *Id.* ¶¶ 43-71.

---

[2] To establish federal jurisdiction under CAFA, a plaintiff must "prove to a reasonable probability that (1) there is minimal diversity (meaning at least one defendant and one member of the putative class are citizens of different states); (2) the putative class exceeds 100 people; and (3) the amount in controversy is greater than $5 million." *Cohen v. Casper Sleep Inc.*, No. 17 Civ. 9325 (WHP), 2018 WL 3392877, at *6 (S.D.N.Y. July 12, 2018) (alteration in original) (quoting *Bigsby v. Barclays Cap. Real Est., Inc.*, 170 F. Supp. 3d 568, 579 (S.D.N.Y. 2016)).   Plaintiff has met his burden on all three requirements, and Defendant does not argue otherwise.   The Complaint alleges minimal diversity because Plaintiff is a citizen of New York and Defendant is a citizen of California.   Compl. ¶¶ 27-28.   The putative class is very likely to exceed 100 people as the Complaint requests certification of a nationwide class.   *Id.* ¶ 35.   Although the Complaint does not allege the amount of damages sought, there also is a reasonable probability that the amount in controversy exceeds $5 million.   *See Cohen*, 2018 WL 3392877, at *7 (finding that because N.Y. G.B.L. § 349(h) requires a minimum damage reward of at least $50, there was a reasonable probability that the amount in controversy exceeded $5 million in an action attempting to certify a nationwide class).

[3] The Complaint additionally seeks class-wide injunctive relief and alleges a violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*   Compl. ¶¶ 42, 58-65, p. 10-11.   At oral argument, Plaintiff's counsel withdrew his request for injunctive relief and his

Plaintiff pleads that the class will consist of all purchasers of the Product in New York and other states during the applicable statute of limitations period.[4]  *Id.* ¶ 35.

On September 11, 2020, Defendant moved to dismiss the Complaint.  Dkts. 10 ("Notice of Motion"), 11 ("Motion to Dismiss"), 12.  Plaintiff filed his brief opposing dismissal on October 2, 2020, Dkt. 14 ("Opposition"), and Defendant filed its reply brief on October 16, 2020, Dkt. 17 ("Reply").   On September 29, 2020, this case was reassigned to the undersigned.  The Court held oral argument on Defendant's Motion to Dismiss on February 18, 2021.  *See* Dkt. 38 ("2/18/21 Tr.").

## II.  Discussion

### A.  Applicable Legal Standards Under Federal Rule of Civil Procedure 12(b)

When reviewing a motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, this Court must accept all factual allegations in the complaint as true and draw inferences from the allegations in the light most favorable to the plaintiff.  *Tsirelman*, 794 F.3d at 313.  Because a court resolving a Rule 12(b)(6) motion "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," *DiFolco v. MSNBC Cable L.L.C.*, 622

---

MMWA claim, acknowledging that these requests for relief lack merit.  *See* Dkt. 38 at 24-25 ("Turning to the first issue about whether the complaint pleads sufficiently to allow the assertion of the claims for injunctive relief, plaintiff concedes that there does not appear to be standing to pursue that. . . . [T]he plaintiff cannot raise those allegations about injunctive relief."), 37 ("Plaintiff withdraws that MMWA claim as this product does not appear to meet the threshold requirement for that claim.").  Accordingly, the Court dismisses Plaintiff's MMWA claim and his request for injunctive relief with prejudice.

[4] "In analyzing putative, nationwide, consumer-protection class actions, several courts have determined that the law of the state where each plaintiff resides and purchased the relevant products should apply."  *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 146 (S.D.N.Y. 2008).  Given that the Complaint alleges that Plaintiff is a citizen of New York and purchased the Product in this District, Compl. ¶¶ 32, 34, and the parties apply New York law in their briefs, the Court applies New York law to Plaintiff's common law claims.

F.3d 104, 111 (2d Cir. 2010), this Court also considers the Product's label, including the "Smokehouse®" description, the color scheme, and the ingredients list. *See Stewart v. Riviana Foods Inc.*, No. 16 Civ. 6157 (NSR), 2017 WL 4045952, at \*1-2, 10 (S.D.N.Y. Sept. 11, 2017). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While this Court accepts factual allegations as true, that principle does not apply to "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

The standard of review for a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is "identical" to the standard for a Rule 12(b)(6) motion for failure to state a claim.[5] *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999).  When presented with a facial Rule 12(b)(1) motion to dismiss, *i.e.*, one that is based solely on the allegations in the complaint and any exhibits attached to the complaint, a court accepts as true all material factual allegations of the complaint, and draws all reasonable inferences in the plaintiff's favor. *Carter v. HealthPort Techns., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016).  But the plaintiff still bears the burden of proving that subject matter jurisdiction exists by a preponderance of the evidence. *See Broidy*

---

[5] Defendant moves to dismiss the Complaint on multiple grounds, including for lack of standing.  Motion to Dismiss at 11-12.  While Defendant cites only Rule 12(b)(6) as the basis for dismissal, Notice of Motion at 1; Motion to Dismiss at 3, a motion to dismiss challenging a plaintiff's standing is properly reviewed under Rule 12(b)(1) for lack of subject matter jurisdiction. *See All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006). The Court therefore construes that portion of Defendant's motion as one made pursuant to Rule 12(b)(1).  *See, e.g.*, *Girotto v. LXC Inc.*, No. 19 Civ. 2858 (KPF), 2020 WL 3318275, at \*3 (S.D.N.Y. June 18, 2020); *Platinum-Montaur Life Scis. LLC v. Navidea Biopharmaceuticals, Inc.*, No. 17 Civ. 9591 (VEC), 2018 WL 5650006, at \*2 (S.D.N.Y. Oct. 31, 2018), *vacated and remanded on other grounds*, 943 F.3d 613 (2d Cir. 2019).

*Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 443 (2d Cir. 2019).

### B. Article III Standing

The Court begins with Defendant's jurisdictional challenge to Plaintiff's standing.  Article III of the United States Constitution limits federal courts "to the resolution of cases and controversies."  *Carter*, 822 F.3d at 55 (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008)).  "'[P]erhaps the most important' of the case-or-controversy doctrines" is the requirement that a plaintiff have standing.  *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).  To meet this requirement, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015)).  A plaintiff seeking to represent a class must personally establish standing for the lawsuit to proceed.  *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

Defendant argues that Plaintiff lacks standing to seek damages in connection with his alleged purchase of the Product because he has failed to adequately allege an injury.  Motion to Dismiss at 11.  Defendant appears to argue that because Plaintiff has not sufficiently pleaded a price premium injury for purposes of his N.Y. G.B.L. §§ 349 and 350 claims, he therefore lacks standing to bring this action under the Constitution.  *Id*.  The Court begins with addressing Plaintiff's Article III standing before turning to the merits of Plaintiff's underlying statutory claim.  *See Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 703-04 (2d Cir. 2020) (summary order) (analyzing Article III standing before deciding whether the plaintiff met the injury requirement of N.Y. G.B.L. §§ 349 and 350); *Kacocha v. Nestle Purina Petcare Co.*, No. 15 Civ. 5489 (KMK), 2016 WL 4367991, at *9 (S.D.N.Y. Aug. 12, 2016) ("[P]laintiff's Article III

standing . . . 'must be decided before the merits.'" (quoting *All. for Envtl. Renewal, Inc.*, 436 F.3d at 87)).

Defendant's challenge to standing fails in light of Plaintiff's allegations that he purchased the Product in reliance on the alleged misrepresentation and, had he "and class members known the truth, they would not have bought the Product or would have paid less for it." Compl. ¶ 22; *accord id.* ¶¶ 49, 57, 65, 69. Such an allegation that a plaintiff would not have purchased a product or would not have paid the same amount comfortably satisfies the injury-in-fact prong of Article III standing. *See, e.g.*, *DaCorta v. AM Retail Grp., Inc.*, No. 16 Civ. 1748 (NSR), 2018 WL 557909, at *6 (S.D.N.Y. Jan. 23, 2018) ("The allegation that Plaintiff would not have made this purchase, or would not have paid the amount she did, is sufficient for Article III injury." (citations and internal quotation marks omitted)); *Borenkoff v. Buffalo Wild Wings, Inc.*, No. 16 Civ. 8523 (KBF), 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018) (finding sufficient allegation of an injury-in-fact where the plaintiff alleged that she would not have purchased the defendants' food had she known about how the food was prepared); *Kacocha*, 2016 WL 4367991, at *7 (holding that the plaintiff's allegation that he paid a price premium and would not have had he known the truth about the product sufficiently alleged an injury for purposes of standing). Plaintiff therefore has adequately alleged an injury-in-fact for purposes of Article III standing.

### C.  Plaintiff's New York General Business Law Sections 349 and 350 Claims

As noted, Plaintiff claims that Defendant violated New York General Business Law §§ 349 and 350 by misleading reasonable consumers into believing that the Product featured almonds whose smoky flavor was derived from being smoked over a fire and, as a result, he and others purchased the Product at a price premium. Compl. ¶¶ 4, 8-12, 14, 22, 24, 44.

Section 349 of the New York General Business Law declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."

N.Y. Gen. Bus. L. § 349(a).  Section 350 prohibits "[f]alse advertising in the conduct of any business, trade, or commerce or in the furnishing of any service*." Id*. § 350.  Sections 349 and 350 are both aimed at conduct that is deceptive—*i.e.*, conduct "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).  "The only difference between the two is that Section 350 more narrowly targets deceptive or misleading advertisements, while Section 349 polices a wider range of business practices."  *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 635 (S.D.N.Y. 2016); *see Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002).  To state a claim under either Section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d. 940, 941 (2012)).

Defendant argues that Plaintiff's §§ 349 and 350 claims must be dismissed because (1) Plaintiff has not adequately pleaded an injury, Motion to Dismiss at 7-11; (2) Plaintiff is attempting to privately enforce the FDCA, *id.* at 4-5; and (3) Plaintiff has failed to demonstrate that the Product is materially misleading, *id.* at 5-7.  The Court rejects each of these arguments.

### 1. Plaintiff Has Pleaded an Injury Under New York General Business Law Sections 349 and 350

Although the Court has concluded that Plaintiff adequately pleaded an injury-in-fact for purposes of Article III standing, whether Plaintiff has properly alleged an injury for his N.Y. G.B.L. §§ 349 and 350 claims requires a separate inquiry.  *See Borenkoff*, 2018 WL 502680, at *2 ("[T]he Second Circuit has held that '[i]njury in fact is a low threshold, which . . . need not be capable of sustaining a valid cause of action.'" (quoting *Ross v. Bank of Am. N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008))).  To plead an injury pursuant to either §§ 349 or 350, "a plaintiff must

allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302.  In the consumer goods context, an allegation of a defendant's deception alone does not suffice to plead injury, because a plaintiff may have received the benefit of the bargain despite the alleged misrepresentation.  *See Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676-77 (S.D.N.Y. 2012); *Small v. Lorillad Tobacco Co.*, 94 N.Y.2d 43, 55-56 (1999).  Instead, a plaintiff "must plead something more than the defendant's deception; for example, that 'the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health.'"  *Preira*, 885 F. Supp. 2d at 677 (quoting *Baron v. Pfizer, Inc.*, 840 N.Y.S.2d 445, 448 (App. Div. 2007)).

An injury under §§ 349 and 350 therefore may be alleged under a price premium theory whereby a plaintiff claims to have paid more for the product than he or she would have if the defendant did not engage in allegedly deceptive practices.  *See e.g.*, *Orlander*, 802 F.3d at 302; *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350-51 (S.D.N.Y. 2020).  A price premium theory requires a plaintiff to "allege[] that a company marketed a product as having a 'unique quality,' that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality."  *Duran*, 450 F. Supp. 3d at 350.

Defendant first argues that Plaintiff has not adequately pleaded a purchase for purposes of N.Y. G.B.L. §§ 349 and 350 because the Complaint does not allege with enough specificity where, when, and for how much Plaintiff purchased the Product.  Motion Dismiss at 8.  However, "[c]laims under GBL §§ 349 [and] 350 are 'not subject to the pleading-with-particularity requirements of Rule 9(b).'. . . They 'need only meet the bare-bones notice-pleading requirements of Rule 8(a).'"  *Manchanda v. Navient Student Loans*, No. 19 Civ. 5121 (WHP), 2020 WL 5802238, at *5 (S.D.N.Y. Sept. 29, 2020) (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*,

11

396 F.3d 508, 511 (2d Cir. 2005)).  Under Rule 8(a), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'"  *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)); *see Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64 (2d Cir. 2014) ("[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.").

Plaintiff's allegations relating to his purchase of the Product meet this standard.  Plaintiff alleges that he purchased the Product in reliance of Defendant's alleged misrepresentation as to how the almonds were produced, and that the purchase occurred "within his district and/or State" (*i.e.*, in the Southern District of New York) and "[d]uring the relevant statute of limitations."  Compl. ¶ 34.  Thus, the Complaint puts Defendant on notice as to Plaintiff's allegations regarding the specific product he purchased, the judicial district where that purchase occurred, whether that purchase occurred within the statute of limitations, and the alleged deceptive practices committed by Defendant.  Rule 8(a) does not mandate that "a complaint be a model of clarity or exhaustively present the facts alleged, as long as it gives [the] defendant fair notice of what [the] plaintiff's claim is and the facts upon which it rests."  *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 422 (S.D.N.Y. 2010) (internal quotations and citations omitted).  The Complaint has done that as to Plaintiff's N.Y. G.B.L. §§ 349 and 350 claims.[6]

---

[6] Defendant also argues that the pleadings do not permit it to assess whether it has a viable statute of limitations defense.  Motion to Dismiss at 8.  But "plaintiffs are not required to plead

The sole case cited by Defendant in support of its challenge to the sufficiency of Plaintiff's purchase allegations, *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120 (E.D.N.Y. 2018), involved a complaint with far less specific allegations of a purchase than the one before this Court. The complaint in *Colella* attached a picture and the ingredients label of one Atkins brand product, called "Chocolate Candies," yet alleged misrepresentations as to different Atkins products, maintaining that "[a]n identical or substantially similar claim appears on every Atkins' product." Amended Complaint, *Colella v. Atkins Nutritionals, Inc.*, No. 17 Civ. 5867 (KAM) (E.D.N.Y.), Dkt. 26 ¶¶ 21-26. The complaint then alleged that the plaintiff purchased those three other Atkins products, *id.* ¶ 52, without including an ingredients label, or any label at all, for those products. *See Colella*, 348 F. Supp. 3d at 142. In contrast, Plaintiff here has specified the exact product he purchased, the representations on that product's label that allegedly were misleading, and, in general terms, when and where he made the purchase.

Defendant next argues that Plaintiff fails to adequately allege a price premium injury because he "does not allege or identify: (a) the specific price he paid; (b) competitors' products for the price premium; or (c) how those products are purportedly comparable to the [a]lmonds." Motion to Dismiss at 11. But here too Plaintiff is demanding more than the law requires. Numerous courts in this Circuit have "found sufficient a plaintiff's general allegation that she would not have paid a price premium but for the defendant's misrepresentations." *Rodriguez v. Hanesbrands Inc.*, No. 17 Civ. 1612 (DLI) (RLM), 2018 WL 2078116, at *5 (E.D.N.Y. Feb. 20, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018). As the court in *Rodriguez* noted, "defendant's contention that a plaintiff 'must identify

---

facts in a complaint to rebut a potential statute of limitations defense." *Kattu v. Metro Petroleum, Inc.*, No. 12 Civ. 54, 2013 WL 4015342, at *1 (W.D.N.Y. Aug. 6, 2013). Defendant will have the opportunity to explore further details of the purchase during discovery to assess the viability of any statute of limitations defense. In addition, at oral argument, Plaintiff's counsel expressed his willingness to provide Defendant with further details as to the purchase. *See* 2/18/21 Tr. at 28-30.

a precisely comparable product in order to allege a GBL section 349 or 350 claim under a price premium theory . . . contradicts the weight of the law in this Circuit.'"  *Id.* (quoting *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 69 (E.D.N.Y. 2017)); *see Axon*, 813 F. App'x at 704 (stating that the plaintiff's "failure to identify the prices of competing products to establish the premium that she paid 'is not fatal to [the plaintiff's] claim'" at the motion to dismiss stage (quoting *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 481-82 (S.D.N.Y. 2014))).

Although the Complaint does not contain a detailed comparison of the Product's prices and competitors' prices, Plaintiff does allege that "the Product is sold at a premium price, approximately no less than $2.79 per 1.5 OZ," Compl. ¶ 24, and that Defendant's deception has caused "reasonable consumers" to purchase the Product at its higher price, instead of similar products, *id.* ¶ 21.  Moreover, Plaintiff alleges that "[h]ad plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it."  *Id.* ¶ 22.  These allegations adequately plead a price premium injury to support Plaintiff's N.Y. G.B.L. §§ 349 and 350 claims.[7]

### 2.   The Complaint Alleges Conduct Separate from Violations of the Federal Food, Drug, and Cosmetic Act

Defendant additionally argues that Plaintiff's N.Y. G.B.L. §§ 349 and 350 claims should be dismissed because he seeks to enforce the FDCA, a statute without a private right of action.

---

[7] In support of its argument that no price premium injury is pleaded, Defendant cites again to *Colella*, 348 F. Supp. 3d at 143, and also to *Izquierdo v. Mondelez Int'l, Inc.*, No. 16 Civ. 4697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016).  Motion to Dismiss at 9.  *Colella* remains distinguishable because the plaintiff there only made conclusory allegations that the defendant charged a premium for its products, without any factual allegations as to that price.  *See Colella*, 348 F. Supp. 3d at 143.  In *Izquierdo*, the court found that the plaintiffs did not allege a cognizable injury, because, among other reasons, the complaint merely recited the word "premium" and did not allege that the plaintiffs paid a higher price for the product than they would have absent the defendant's allegedly deceptive conduct.  *See* 2016 WL 6459832, at *7.  Plaintiff here has done that.

Motion to Dismiss at 4.  Defendant is correct that the Complaint repeatedly cites provisions of 21 C.F.R. § 101.22(i), a regulation promulgated by the United States Food and Drug Administration pursuant to the FDCA that sets out flavor-related labeling requirements for food products.  Compl. ¶¶ 4, 8, 13.  Defendant also is correct that the FDCA does not provide for a private right of action. *See PDK Labs Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997).  Nor may a plaintiff circumvent such a lack of a private right of action in one statute by incorporating allegations of its violations into claims pleaded under another statute that does allow for a private right of action. *See, e.g.*, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005); *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001).

In this context, however, the Second Circuit has instructed that "a GBL claim is viable where the plaintiff 'make[s] a free-standing claim of deceptiveness . . . that happens to overlap with a possible claim' under another statute that is not independently actionable."  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 127 (2d Cir. 2017) (quoting *Broder*, 418 F.3d at 200).  Thus, were Plaintiff's allegations of FDCA violations the sole bases for his N.Y. G.B.L.  §§ 349 and 350 claims, without any "free-standing claims of deceptiveness," dismissal of these claims would be appropriate.

Certain allegations in the Complaint appear to rely on federal regulations to establish deceptiveness for purposes of violations of N.Y. G.B.L. §§ 349 and 350.  *See* Compl. ¶¶ 4 (citing 21 C.F.R. § 101.22(i)), 8 (citing 21 C.F.R. § 101.22(i)(1)(i)), 13 (citing 21 C.F.R. § 101.22(i)(1)). In general, these regulations provide labeling requirements for a food product when it contains an artificial flavor which stimulates its characterizing flavor.  The implications from these citations appear to be that the Product should have been labeled "Smokehouse®" only if its flavor was in fact the result of actual smoking in a smokehouse, without artificial flavor simulating a smoky taste, and that Defendant's failure to comply with § 101.22(i) made reasonable consumers more

15

likely to purchase the Product, including at a higher price than competitors' almonds.

Reading the Complaint in the light most favorable to Plaintiff, however, the Court determines that Plaintiff alleges multiple "free-standing claims of deceptiveness" that may violate N.Y. G.B.L. §§ 349 and 350, apart from the Product's alleged failure to comply with the labeling requirements of 21 C.F.R. § 101.22(i).  *See* Compl. ¶¶ 17-18, 22-23, 46-49.  A few examples of these alleged separate bases for deceptiveness include the misleading use of the word "Smokehouse®" to indicate that the almonds were produced through an actual smoking process (regardless of whether that use also violated § 101.22(i)), *id.* ¶ 18, the packaging's deceptive "color scheme evocative of the fire used in actual smoking," *id.* ¶ 4, the Product's elevated price, *id.* ¶ 22, and the assertion that smoked almonds are "not an unheard of or rare delicacy," *id.* ¶ 12.  These allegations are separate from violations of the cited federal regulations.  The Court therefore concludes this is not a case where Plaintiff "dogged[ly] insist[s]" on the FDCA violations misleading the reasonable consumer, such that his "true goal is to privately enforce alleged violations of the FDCA."  *PDK Labs, Inc.*, 103 F.3d at 1113.

While dismissal of Plaintiff's N.Y. G.B.L. §§ 349 and 350 claims is unwarranted on this ground, the Court proceeds to analyze the sufficiency of these claims in the subsequent sections without reliance on any purported violations of § 101.22(i).  *See e.g.*, *Pichardo v. Only What You Need, Inc.*, No. 20 Civ. 493 (VEC), 2020 WL 6323775, at *3 n.6 (S.D.N.Y. Oct. 27, 2020); *Quiroz v. Beaverton Foods, Inc.*, No. 17 Civ. 7348 (NGG), 2019 WL 1473088, at *5-6 (E.D.N.Y. Mar. 31, 2019).

### 3.   Plaintiff Has Plausibly Alleged a Claim Under New York General Business Law Sections 349 and 350

At the core of this case is whether the Product was materially misleading to reasonable consumers as to the manner in which the almonds were prepared.  Defendant argues that dismissal at this stage is required because "no reasonable consumer seeing a red package labeled

16

'Smokehouse' would conclude that the [a]lmonds necessarily derive their taste from having been smoked over a hardwood fire in an outbuilding constructed for that specific purpose." Motion to Dismiss at 6. While the Court finds Defendant's motion to present a close call, the Court cannot conclude at this early stage, where all reasonable inferences must be drawn in Plaintiff's favor, that the Complaint fails to plausibly allege that a reasonable consumer would be misled by the Product.

To survive a motion to dismiss a consumer fraud claim brought under New York law, a plaintiff must plausibly allege facts showing that the statements were "'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (quoting *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26).[8] Plausibility in this context "demands 'more than a sheer possibility that a defendant acted unlawfully,'" *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)

---

[8] Although it is well settled that a plaintiff's N.Y. G.B.L. claims may be dismissed as a matter of law under the reasonable consumer standard, courts have offered various articulations of the minimal pleading required to survive a defendant's motion to dismiss a consumer fraud claim. *See e.g.*, *Grossman v. Simply Nourish Pet Food Co. LLC*, No. 20 Civ. 1603 (KAM), 2021 WL 293774, at *8 (E.D.N.Y. Jan. 27, 2021) (explaining that a defendant "seeking to dismiss a false labeling claim must 'extinguish . . . the possibility' that a reasonable consumer could be misled" (quoting *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM), 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013))); *Fishon v. Peloton Interactive, Inc.*, No. 19 Civ. 11711 (LJL), 2020 WL 6564755, at *7 (S.D.N.Y. Nov. 9, 2020) ("On a motion to dismiss, the Court considers whether the complaint plausibly alleges that a reasonable consumer would ascribe the meaning that plaintiffs allege they ascribed to it."); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020) ("Dismissal is warranted only in a 'rare situation' where 'it [is] impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived.'" (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (alteration in original))). In an unpublished summary order, the Second Circuit has also enunciated a standard which would appear more demanding on a plaintiff. *See Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (summary order) (holding that "plaintiffs must do more than plausibly allege that a 'label might conceivably be misunderstood by some few consumers,'" but instead "must plausibly allege 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" (quoting *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016))). The Court need not decide which standard controls, because Plaintiff's allegations meet even *Jessani*'s more demanding requirement.

(quoting *Iqbal*, 556 U.S. at 678), and considers "'the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable,'" *id.* (quoting *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)).   In determining whether the Product's label is misleading, this Court applies an objective test, viewing the allegedly misleading statement in the context of the product label as a whole.  *See Cosgrove v. Blue Diamond Growers*, 19 Civ. 8993 (VM), 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020); *Pichardo*, 2020 WL 6323775, at *2; *see also Fink*, 714 F.3d at 742 (explaining that "[t]he primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself," and "context is crucial").   While it is well settled that in appropriate circumstances, a court may determine at the motion to dismiss stage that an allegedly deceptive misrepresentation would not have misled a reasonable consumer as a matter of law, *see id.* at 741, multiple courts have indicated that such relief should rarely be granted, *see, e.g.*, *Hesse v. Godiva Chocolatier, Inc*., 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp 3d. 226, 242 (S.D.N.Y. 2020); *Hertz Corp. v. Accenture LLP*, No. 19 Civ. 3508 (WHP), 2019 WL 5537997, at *4 (S.D.N.Y. Oct. 25, 2019).  That is because the question of whether a representation is materially misleading "is generally a question of fact not suited for resolution at the motion to dismiss stage." *Duran*, 450 F. Supp. 3d at 346.

Against this legal backdrop and crediting Plaintiff's allegations, the Court concludes that Plaintiff has plausibly pleaded that the Product is likely to mislead a reasonable consumer into believing that Defendant's almonds were manufactured through an actual smoking process. Plaintiff therefore has sufficiently pleaded a material misrepresentation under N.Y. G.B.L. §§ 349 and 350.

To start, the front packaging of the Product is labeled, in large font, with the word

"Smokehouse®." The word "smokehouse" is a noun that describes a physical structure where food is prepared through the process of using actual smoke. *See Smokehouse*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/smokehouse ("[A] building where meat or fish is cured by means of dense smoke.") (last visited Mar. 9, 2021); *Smoke-house*, Oxford English Dictionary Online, https://www.oed.com/view/Entry/182710?redirectedFrom =smokehouse#eid ("A house or room used for curing meat, fish, etc., by means of smoke.") (last visited Mar. 9, 2021); *see also* 2/18/21 Tr. at 33 (statement of Plaintiff's counsel) (describing an industrial smoking process whereby "almonds are put on a huge tray and they're slid into a smoking structure like . . . an industrial smokehouse"). The word "smokehouse" is exclusively used as a noun to describe such a physical structure; it is not also an adjective or otherwise a word commonly used to describe a flavor. And nothing else on the front of the packaging would alert consumers that the "Smokehouse®" label refers only to the almonds' flavor, rather than the flavoring process, such as words like "smoky flavor." As such, the Product is labeled with a word whose sole meaning goes directly to the misrepresentation alleged by Plaintiff, *i.e.*, the fire-infused process by which a food product is prepared, without any qualifying or clarifying language.[9]

For that reason, this case presents a very different situation from the many cases in this District involving vanilla descriptors, upon which Defendant heavily relies. Several courts in this District have found the label "vanilla" on various food products not to be materially misleading, despite the products lacking any actual vanilla beans or vanilla bean extract. *See, e.g.*, *Wynn v. Topco Associates, LLC.*, No. 19 Civ. 11104 (RA), 2021 WL 168541, at *2-5 (S.D.N.Y. Jan. 19, 2021); *Barreto v. Westbrae Nat., Inc.*, No. 19 Civ. 9677 (PKC), 2021 WL 76331, at *1, 3-6

---

[9] Because the Court concludes that Plaintiff has adequately pleaded his N.Y. G.B.L. §§ 349 and 350 claims based on the use of the word "Smokehouse®" on the label, the Court does not reach Plaintiff's assertion that the color scheme of the packaging further leads a consumer to believe that the almonds were prepared over a fire. *See* Compl. ¶ 4.

(S.D.N.Y. Jan. 7, 2021); *Steele v. Wegmans Food Mkts., Inc.*, 472 F. Supp. 3d 47, 49-51 (S.D.N.Y. 2020); *Cosgrove*, 2020 WL 7211218, at *3-5; *Pichardo*, 2020 WL 6323775, at *3-6.  Unlike the word "smokehouse," however, the word "vanilla" can be used as a both a noun and an adjective, and can be commonly understood to denote a flavor, in addition to the vanilla bean or an extract from the bean.  *See Vanilla*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/vanilla (listing multiple definitions including: a "vanilla bean", "a commercially important extract of the vanilla bean that is used especially as a flavoring," and "flavored with vanilla") (last visited Mar. 9, 2021); *Vanilla*, Oxford English Dictionary Online, https://www.oed.com/view/Entry/221377?redirectedFrom=vanilla#eid (defining vanilla, among other definitions, as "[p]assing into adj.: vanilla-coloured, vanilla-flavoured") (last visited Mar. 9, 2021).[10]  Further, the Court is unaware of any cases in this Circuit which have applied the reasoning underlying these decisions as to a product's flavor outside the context of labels with vanilla descriptors.[11]

While no prior case appears to be directly on point to the scenario presented here, some other decisions within the Circuit have addressed more analogous product descriptions concerning the manner of producing goods.  The Honorable Brenda K. Sannes of the Northern District of New York addressed the production of Tito's vodka in connection with a claim that its bottles were deceptively labeled.  *See Singleton v. Fifth Generation, Inc.*, No. 15 Civ. 474 (BKS), 2016 WL 406295, at *1-2 (N.D.N.Y. Jan. 12, 2016).  The plaintiff in *Singleton* contended that the label's use of the term "handmade" and statement that it was "Crafted in an Old Fashioned Pot Still by

---

[10] At oral argument, Defendant's counsel provided another analogy: "barbecue potato chips."  *See* 2/18/21 Tr. at 6.  Although the Court takes no position on whether labeling potato chips with added barbecue flavor as "barbecue" would be misleading, the term "barbecue," like "vanilla," is commonly used to describe a flavor, in addition to a manner of food preparation.

[11] Neither was Defendant's counsel able to point to any such cases at oral argument.  *See* 2/18/21 Tr. at 12.

America's Original Microdistillery," *id.* at *2, would lead a reasonable consumer to believe that the vodka was made by human hand, with little automated machinery, whereas in actuality the vodka was "manufactured in massive buildings containing ten floor-to-ceiling stills, using automated machinery and highly mechanized processes," *id.* at *9.  Judge Sannes rejected the defendant's argument that "no reasonable consumer could believe that the vodka was physically made by human hands without machinery," and held that the "handmade" representation could lead a consumer to believe that the vodka was made in a "hands-on, small-batch process." *Id.* at *9-10.  Similarly, a reasonable consumer could read the Product's "Smokehouse®" label to believe that the almonds were smoked over a fire in a smokehouse or similar structure.

Also instructive is the recent decision of the Honorable Alison J. Nathan in *Hesse v. Godiva Chocolatier, Inc.*  At issue in *Hesse* was whether the defendant's use of the words "Belgium 1926" on its chocolate products misled consumers to believe that the chocolates were made in Belgium. 463 F. Supp. 3d at 460.  The defendant moved for dismissal, arguing that a reasonable consumer could only read the "Belgium 1926" representation as going to the establishment date and location of the company. *Id.* at 467-68.  But Judge Nathan found that the "equally, if not more, plausible inference" is that the representation also goes to the continued production of the chocolates in Belgium. *Id.*  Emphasizing the burden that the defendant bears to prevail at the motion to dismiss stage, Judge Nathan found that she could not "conclude, at this juncture, that *no* reasonable consumer could take such a view." *Id.* at 467 (emphasis in original).  Here, even if a competing inference of the "Smokehouse®" label is that the almonds merely contain smoky flavor, an equally plausible inference is that the almonds were prepared over actual smoke.

The Complaint also pleads that it would not be unreasonable for consumers to believe that the almonds here were smoked over a fire.  The Complaint alleges that it is not an "unheard of or rare delicacy" for almonds to obtain a smoky flavor from an actual smoking process over a fire,

Compl. ¶ 12, and Defendant has not yet argued otherwise. *See also id.* ¶ 7 ("For example, hickory wood chips – from deciduous hardwood trees of the genus Carya – are often used for providing hearty yet sweet flavors to nuts and meat."). The logical inference from this allegation is that it would not be unreasonable for a consumer reading a description indicating that almonds were flavored through a smoking process to assume that the almonds were in fact prepared that way. Smoking almonds also does not seem to entail a process that would trigger such substantial costs that no reasonable consumer would believe that these almonds, priced at "no less than $2.79 per 1.5 OZ," *id.* ¶ 24, were smoked over a fire. *Cf. Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (summary order) (finding it is "not plausible that a significant portion of the consuming public acting reasonably would conclude" that the defendant's mass produced, modestly priced olive oil was made with truffles, which the plaintiffs described as "the most expensive food in the world"); *Brumfield v. Trader Joe's Co.*, No. 17 Civ. 3239 (LGS), 2018 WL 4168956, at *2 (S.D.N.Y. Aug. 30, 2018) (finding that due to the rarity and price of truffles, no reasonable consumer "would expect the $4.99 bottle of olive oil at Trader Joe's to contain actual truffles").

Given the plausibility of Plaintiff's allegations that the "Smokehouse®" label could mislead reasonable consumers, Defendant finds no help from the disclosure on the Product's ingredients list that the almonds contain "NATURAL HICKORY SMOKE FLAVOR." Compl. ¶ 15. An ingredients list on the back of a package cannot cure a misleading label on the front. *See Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) (explaining that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box").

Lastly, the Complaint also sufficiently pleads materiality. A "'material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or

conduct regarding, a product.'"  *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 360 (S.D.N.Y. 2016) (quoting *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004)).  Plaintiff has alleged just that.  First, the Complaint alleges that consumers prefer almonds that are prepared from a "natural production process, i.e., actual smoking, as opposed to the 'taste' of being smoked through 'smoke flavor,'" and that consumers have those preferences for nutritional and health reasons, including to avoid additives and highly processed ingredients. Compl. ¶ 16.  The Complaint further alleges that these preferences were material in the decision to purchase the almonds, for both Plaintiff and the putative class:  "Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it."  *Id.* ¶ 22. Again, the Court must assume these well-pleaded facts are true and draw all reasonable inference in Plaintiff's favor.  Doing so, the Court finds that Plaintiff has sufficiently pleaded materiality. *See, e.g.*, *Petrosino v. Stearn's Prods., Inc.*, No. 16 Civ. 7735 (NSR), 2018 WL 1614349, at *7 (S.D.N.Y. Mar. 30, 2018) (finding allegation that a product's allegedly misleading labeling was material because it "induced Plaintiff and class members to purchase and pay a premium for Defendant's products," among other allegations, sufficient to state a claim under N.Y. G.B.L. §§ 349 and 350); *Silva v. Smucker Nat. Foods, Inc.*, No. 14 Civ. 6154 (JG), 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) (finding the plaintiff's allegation that "he relied in part on the website's representation" sufficient to plead materiality).

To be sure, in denying dismissal as to the §§ 349 and 350 claims, the Court only holds that Plaintiff has pleaded sufficient allegations to survive a Rule 12(b)(6) motion.  Further factual development may very well reveal that reasonable consumers would not infer from the Product's label that the almonds were smoked, or that the process by which the almonds were flavored is not a significant consideration when consumers decide to purchase the Product.  *Cf. Petrosino*, 2018 WL 1614349, at *7 (observing that "[t]he question of whether [d]efendant's label is actually

misleading to a reasonable consumer" is one "of fact better suited for the jury"). But the Court is now considering the question at the motion to dismiss stage and has only the pleadings upon which to rely, with inferences to be drawn in Plaintiff's favor. Because the Court concludes that those allegations sufficiently state claims under N.Y. G.B.L. §§ 349 and 350, the Court denies Defendant's Motion to Dismiss as to those claims.

### D.  Plaintiff's Common Law Claims

The Court now turns to the host of claims that Plaintiff brings under common law, all of which in some way relate to the same alleged misrepresentation on the Product's label. For reasons that follow, each of these claims falls short in at least one fatal way.[12]

### 1.  Plaintiff Fails to Allege Fraudulent Intent to Support a Fraud Claim

To state a claim of common law fraud under New York law, a plaintiff must allege "(1) a material misstatement, (2) known by the perpetrator to be false, (3) made with an intent to deceive, (4) upon which the plaintiff reasonably relies, and (5) damages." *Quiroz*, 2019 WL 1473088, at *10 (internal quotation marks omitted) (quoting *Rotterdam Ventures v. Ernst & Young*, 752 N.Y.S.2d 746, 747-48 (App. Div. 2002)). A claim sounding in fraud must meet the heightened standard set forth in Rule 9(b), which requires that the allegations "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet this requirement, a complaint

---

[12] Defendant argues that Plaintiff's Opposition "ignore[s] at least one of [Defendant's] dismissal arguments" for every common law claim, necessitating dismissal of those claims. Reply at 1. "Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim." *Estate of M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 423 (S.D.N.Y. 2017) (internal quotation marks and citation omitted). "Application of this proposition is, however, tempered by this Court's discretion." *Lipton v. County of Orange, New York*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004). While Plaintiff did not respond to each argument for dismissal raised in Defendant's lead brief, Plaintiff's Opposition made clear that he continues to defend each of his unwithdrawn common law claims, which was confirmed at oral argument. *See* 2/18/21 Tr. at 16-17, 25-26. The Court therefore addresses the merits of Plaintiff's common law claims and does not treat them as abandoned. *See Estate of M.D.*, 241 F. Supp. 3d at 423.

must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify

the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain

why the statements (or omissions) are fraudulent." *Duran*, 450 F. Supp. 3d at 352-53 (quoting

*Eternity Glob. Master Fund, Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir.

2004)). This is commonly described as the "who, what, where, when, and why" of the claim. *Chu*

*v. Samsung Elecs. Am., Inc.*, No. 18 Civ. 11742 (GHW), 2020 WL 1330662, at *5 (S.D.N.Y. Mar.

23, 2020). "Moreover, a 'fraud claim should . . . plead scienter, and although it may do so generally

. . . the plaintiff must still allege facts that give rise to a strong inference of fraudulent intent.'"

*Hesse*, 463 F. Supp. 3d. at 472 (quoting *B&M Linen Corp. v. Kannegiesser, USA, Corp.*, 679 F.

Supp. 2d. 474, 481 (S.D.N.Y. 2010)). A plaintiff may demonstrate this inference by (1) "alleging

facts to show that defendants had both motive and opportunity to commit fraud," or (2) "by

alleging facts that constitute strong circumstantial evidence of conscious misbehavior or

recklessness." *Duran*, 450 F. Supp. 3d at 353 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273,

290-91 (2d Cir. 2006)).

The Court dismisses Plaintiff's fraud claim for failure to plead fraudulent intent. Plaintiff

asserts that "Defendant's fraudulent intent is evinced by its failure to accurately identify the

Product on the front label, when it knew its statements were not true nor accurate." Compl. ¶ 68.

Such conclusory allegations fall short of the Rule 9(b) standard. *See Twohig v. Shop-Rite*

*Supermarkets, Inc.*, No. 20 Civ. 763 (CS), 2021 WL 518021, at *8 (S.D.N.Y. Feb. 11, 2021)

(finding identical allegations to be too conclusory to support a strong inference of fraudulent

intent); *Barreto*, 2021 WL 76331, at *8 (dismissing fraud claim because the plaintiff only pleaded

"conclusory allegations" that the defendant's "'fraudulent intent is evinced by its failure to

accurately identify the [p]roducts on the front label when it knew this was not true'"); *Hesse*, 463

F. Supp. 3d at 473 (concluding that the plaintiff's allegations that the defendant "knew or

recklessly disregarded" that a representation was misleading and that the defendant intended for consumers to rely on such representations "as evidenced by [the defendant's] intentionally using [the] labeling" are the "sorts of conclusory and legal allegations, devoid of particularized facts giving rise to an inference of scienter" that are insufficient to satisfy Rule 9(b)).

As noted above, "conclusory assertions of intent" may support a fraud claim "'if supported by facts giving rise to a strong inference of fraudulent intent.'" *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579 (2d Cir. 2005) (quoting *IUE AFL-CIO Pension Fund v. Hermann*, 9 F.3d 1049, 1057 (2d Cir. 1993)). These facts could include "'allegations of a motive to deceive and access to accurate information,'" *id.* (quoting *Cohen v. Koenig*, 25 F.3d 1168, 1173-74 (2d Cir. 1994)), as well as allegations which "'constitute strong circumstantial evidence of conscious misbehavior or recklessness,'" *Lerner*, 459 F.3d at 290-91 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Plaintiff has not alleged any facts that would allow for a circumstantial finding of fraudulent intent, such as by showing an awareness of the Product's deceptive nature. *Cf. Greene*, 262 F. Supp. 3d at 73-74 (finding that the plaintiff adequately pleaded facts supporting an inference of fraudulent intent by alleging that the defendant sponsored a study, the results of which refuted the claims made on defendant's label); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 473 (E.D.N.Y. 2013) (finding sufficient inference of fraudulent intent when the plaintiffs pointed to lack of supporting evidence for the defendant's health claims, a study that contradicted the defendant's statements, and Federal Trade Commission settlements regarding similar claims of fraudulent misrepresentations). In fact, an allegation in the Complaint militates against a finding of fraudulent intent. The Complaint alleges that the ingredients list on the back of the Product reveals that the Product retains its flavor from added "smoke flavor" instead of the actual smoking process. Compl. ¶ 15. While an ingredients list accurately describing a product's nutritional content does

not cure an otherwise deceptive label, *see Mantikas*, 910 F.3d at 637, "it is certainly a substantial barrier to a plaintiff seeking to plead a claim of fraud," *Campbell v. Whole Foods Mkt. Grp., Inc.*, No. 20 Civ. 1291 (GHW), 2021 WL 355405, at *12 (S.D.N.Y. Feb. 2, 2021).

The Complaint also does not allege a specific motive for the fraud.  Even construing Plaintiff's allegations regarding the price premium charged by Defendant as evincing a desire to profit from the misrepresentation, "simply alleging a defendant's self-interested desire to increase sales does not give rise to an inference of fraudulent intent." *Duran*, 450 F. Supp. 3d at 354; *accord Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 464-65 (S.D.N.Y. 2016) ("[A] generalized profit motive . . . does not create the requisite 'strong inference' of fraudulent intent." (citing *Chill v. G.E. Co.*, 101 F.3d 263, 268 (2d Cir. 1996))); *see Quiroz*, 2019 WL 1473088, at *11; *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM), 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013). As the Honorable Gregory H. Woods recently held when faced with an identical theory of fraudulent intent, the allegation that "'Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true' . . . is insufficient because '[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendant's generalized motive to satisfy consumers' desire [or] increase sales and profits.'" *Campbell*, 2021 WL 355405, at *12 (quoting *Davis*, 297 F. Supp. 3d at 337) (alterations in original).

Further, when asked at oral argument, Plaintiff's counsel was unable to point to any allegation in the Complaint that supports an inference of fraudulent intent.[13]  *See* 2/18/21 Tr. at

---

[13] At oral argument, Plaintiff's counsel asserted that Defendant's use of the trademark symbol in "Smokehouse®" showed an "awareness of the regulations and what's required" and is the "best evidence of intent that can be asserted [by Plaintiff]."  2/18/21 Tr. at 37-38.  This theory was never pleaded in the Complaint or even argued in Plaintiff's opposition brief.  In any event,

37-38.  For all these reasons, Plaintiff has failed to plead sufficient allegations to raise an inference of Defendant's fraudulent intent, and his fraud claim is dismissed with prejudice.

### 2.  Plaintiff Fails to Allege a Special Relationship to Support a Negligent Misrepresentation Claim

To sufficiently plead a claim for negligent misrepresentation, a plaintiff must allege that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."  *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 114 (2d Cir. 2012).  "[A] special relationship exists if the defendant 'possess[es] unique or special expertise' or is 'in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'"  *Sarr v. BEF Foods, Inc.*, No. 18 Civ. 6409 (ARR), 2020 WL 729883, at *6 (E.D.N.Y. Feb. 13, 2020) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011)).  The Second Circuit has further explained that "where the statement at issue is directed at a 'faceless or unresolved class of persons,' no duty of care arises."  *Aetna Cas. & Sur. Co.*, 404 F.3d at 584 (quoting *White v. Guarente*, 43 N.Y.2d 356, 361 (1977)).  This requirement carries extra weight "[i]n the commercial context," where "a closer degree of trust between the parties than that of the ordinary buyer and seller is required."  *Stoltz v. Fage Dairy Processing Indus., S.A.*, 14 Civ. 3826 (MKB), 2015 WL 5579872, at *24 (E.D.N.Y. Sept. 22, 2015).

Plaintiff alleges that Defendant's duty here arose from "h[olding] itself out as having special knowledge and experience" in the sale of the Product, Compl. ¶ 54, and a breach of that

---

the Court is aware of no authority suggesting that the use of a trademark symbol, without more, allows an inference of fraudulent intent.

duty occurred when Defendant misrepresented the Product's attributes, *id.* ¶¶ 50-57.  These allegations, however, fall short of establishing a special relationship between Plaintiff and Defendant.  *See, e.g.*, *Twohig*, 2021 WL 518021, at *8 (finding that a similar allegation that the defendant "held itself out as having special knowledge and experience in the production, service and/or sale of the product type" was insufficient to adequately plead the existence of a special relationship).  The status of a retailer as a "trusted brand . . . does not give rise to a duty to impart correct information, as the plaintiffs comprise a 'faceless o[r] unresolved class' of consumers." *Sarr*, 2020 WL 729883, at *6 (quoting *Aetna Cas. & Sur. Co.*, 404 F.3d at 584) (alteration in original); *accord Campbell*, 2021 WL 355405, at *11; *Wynn*, 2021 WL 168541, at *6; *Barreto*, 2021 WL 76331, at *7; *Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 193 (S.D.N.Y. 2016); *Izquierdo*, 2016 WL 6459832, at *8 ("[T]he vast majority of arms-length commercial transactions, which are comprised of 'casual statements and contacts,' will not give rise to negligent misrepresentation claims."); *Singleton*, 2016 WL 406295, at *13 (noting that the plaintiff's purchase of the defendant's product "in a garden variety retail transaction" does not establish a special relationship between the parties to give rise to a duty of care); *Stoltz*, 2015 WL 5579872, at *24-26.  Here, the Complaint describes nothing more than a common relationship "which is that of an ordinary buyer and seller."  *Campbell*, 2021 WL 355405, at *11.

Nevertheless, even if the Complaint only "sparsely ple[ads]" a special relationship of trust or confidence, a claim of negligent misrepresentation may survive if a plaintiff "emphatically allege[s]" that "the person making the representation held or appeared to hold unique or special expertise" and that "the speaker was aware of the use to which the information would be put and supplied it for that purpose."  *Greene*, 262 F. Supp. 3d at 75 (quoting *Eternity Glob.*, 374 F.3d at 188).  The Complaint fails to make this showing as well.

Plaintiff's conclusory allegation that Defendant's duty arose from "having special

knowledge and expertise in the production, service and/or sale of the product," Compl. ¶ 54, does not plead a special relationship based on Defendant's possession of unique knowledge.  In cases where courts have found a defendant to hold itself out as an expert, the representations involved scientific, technical, or non-public information, *i.e.*, subjects of which a regular consumer normally would be unaware of and therefore more likely to rely on the provided information.  *See Hughes*, 930 F. Supp. 2d at 475 (finding inference of a special relationship when vitamin manufacturer purported to have "good clinical research," and included a section titled "[a]sk an [e]xpert" on its website); *Greene*, 262 F. Supp. 3d at 76 ("Defendant's representations suggested specific scientific information to which Plaintiffs would not have had access [to] and on which they could reasonably have relied."); *Silver Oak Cap. L.L.C. v. UBS AG*, 920 N.Y.S.2d 325, 327 (App. Div. 2011) ("Plaintiffs sufficiently allege that [the defendant] had unique and special knowledge about the source of the financing for the company in which they invested.").  The Complaint fails to allege facts showing that Defendant possesses such unique and special knowledge of which a regular consumer would be unaware.  Quite the opposite: Defendant publicly disclosed the Product's ingredients on the back of the packaging.  Nor does the Complaint allege that Defendant "was aware of the use to which the information would be put and supplied it for that purpose." *Greene*, 262 F. Supp. 3d at 75.  As discussed in the context of Plaintiff's common law fraud claim, the Complaint does not allege Defendant's awareness of the deceiving nature of its representations.

Accordingly, Plaintiff's claim for negligent misrepresentation is dismissed with prejudice.[14]

---

[14] Defendant also argues that Plaintiff has failed to allege a misrepresentation or an injury for both his fraud and negligent misrepresentation claims.  Motion to Dismiss at 12.  The Court does not reach these arguments because it dismisses Plaintiff's fraud and negligent misrepresentation claims on other grounds.

### 3. Plaintiff Failed to Plead Notice as Required for a Breach of Express Warranty Claim

Plaintiff's claims for breaches of express and implied warranties rely on identical allegations: Defendant manufactured and labeled the Product in a manner that warranted to Plaintiff and class members that the almonds were smoked over a fire.  Compl. ¶ 59.  The Complaint alleges that Defendant had a duty, as "one of the most recognized companies in the nation in this sector," to "disclose and/or provide non-deceptive descriptions and marketing of the Products."  *Id.* ¶¶ 60-61.  Additionally, Plaintiff asserts that he "provided or will provide" notice to Defendant, and that Defendant has "received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years."  *Id.* ¶¶ 62-63.

A claim for breach of express warranty under New York law requires a plaintiff to allege an "'affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon.'"  *Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes Co.*, 382 F. App'x 110, 112 (2d Cir. 2010) (internal quotations omitted) (quoting *Schimmenti v. Ply Gem Indus., Inc.*, 549 N.Y.S.2d 152, 154 (App. Div. 1989)).  To survive a motion to dismiss, a breach of express warranty claim must allege: "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach."  *Goldemberg*, 8 F. Supp. 3d at 482.  "Generalized statements by the defendant . . . do not support an express warranty claim if they are 'such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely.'"  *Silva*, 2015 WL 5360022, at *10 (quoting *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996)).  Under New York law, a plaintiff must also give notice of the breach to the seller before he can recover under an express warranty claim.  *See* N.Y. U.C.C. § 2-607(3)(a)

("[B]uyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach.").  The notice requirement applies to consumer fraud actions such as this one.  *See e.g.*, *Campbell*, 2021 WL 355405, at *12; *Lugones*, 440 F. Supp. 3d at 244-45; *Suarez v. Cal. Nat. Living, Inc.*, No. 17 Civ. 9847 (VB), 2019 WL 1046662, at *9 (S.D.N.Y. Mar. 5, 2019); *Colella*, 348 F. Supp. 3d at 143-44; *Tomasino v. Estee Lauder Cos. Inc. ("Tomasino I")*, 44. F. Supp. 3d 251, 260-63 (E.D.N.Y. 2014).

Plaintiff contends that pre-suit notice was not required here, citing an exception for retail customers crafted by certain New York state courts.  Opposition at 17.  The Court disagrees. "Although a minority of New York State cases suggest an exception to the notice requirement in retail sales . . . the exception appears to be exclusively applied when a party alleges physical, in addition to economic, injury."  *Colella*, 348 F. Supp. 3d at 143-44; *see Campbell*, 2021 WL 355405, at *12 n.12; *Lugones*, 440 F. Supp. 3d at 245; *Richards v. Johnson & Johnson, Inc.*, No. 17 Civ. 178 (BKS), 2018 WL 6573332, at *4 (N.D.N.Y. Dec. 13, 2018) (noting that the exception applies only to actions where personal injury is pleaded and that a similar "distinct treatment of warranty claims in personal injury cases is found in other jurisdictions"); *Tomasino v. Estee Lauder Cos., Inc. ("Tomasino II")*, No. 13 Civ. 4692 (ERK), 2015 WL 4715017, at *4 (E.D.N.Y. Aug. 7, 2015) (rejecting the plaintiff's contention that the retail sale exception applies, because "every case . . . in which courts implementing New York law declined to apply the notice requirement . . . amounted to a tort claim in which the plaintiff suffered some personal injury").  Because Plaintiff only alleges economic injury in the form a price premium paid for the Product, this exception—to the extent it exists at all—is inapplicable.

At oral argument, Plaintiff's counsel conceded that Plaintiff never provided Defendant with pre-suit notice.  2/18/21 Tr. at 26.  The Complaint likewise does not sufficiently plead notice. Plaintiff merely alleges that he "provided or will provide notice to defendant, its agents, its

representatives, retailers and their employees." Compl. ¶ 62.  The Court cannot construe this vague allegation as adequately pleading that Plaintiff did in fact provide notice.  *See Campbell*, 2021 WL 355405, at *12 (rejecting a verbatim pleading of notice as "wholly equivocal," because it did "not allege that notice has been provided, only that Plaintiff 'provided or will provide' notice"); *see also NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.,* 693 F.3d 145, 149 n.1 (2d Cir. 2012) (explaining that a court is not required to assume the truth of a plaintiff's allegations if those allegations are "conclusory or contradicted by more specific allegations or documentary evidence" (citing *Iqbal*, 556 U.S. at 678-79)).  As Judge Woods reasoned in *Campbell*, "[i]f Plaintiff had provided notice, she could have written that, rather than pleading, in essence, both that she did provide notice, and that she did not do so but will in the future." 2021 WL 355405, at *12.

The Complaint also suggests that the notice requirement has been satisfied because "Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years."  Compl. ¶ 63.  This allegation similarly is too conclusory and is unsupported by any specific factual allegations.  For instance, Plaintiff does not point to any other lawsuits concerning the Product, or any specific customer complaints that Defendant received about the Product.  Nor was Plaintiff's counsel able to do so at oral argument. 2/18/21 Tr. at 26-27.  But even if Defendant had been aware of similar suits or customer complaints prior to the filing of this lawsuit, New York's pre-suit notice requirement still has not been met, as that requirement is intended to "open[] the way for normal settlement through negotiation."  *Singleton*, 2016 WL 406295, at *12 (quoting N.Y. U.C.C. § 2-607 (Official Comment 4)); *see Niles v. Beverage Mktg. USA, Inc.*, No. 19 Civ. 1902 (SJF) (ARL), 2020 WL 4587753, at *6 (E.D.N.Y. Apr. 16, 2020) ("Even if the plaintiffs were correct that the defendant companies were on notice that there is an issue with the product by virtue of [a prior]

lawsuit, the plaintiffs have not pointed to any law that relieves them of their own obligation to provide notice before seeking a remedy [for breach of express warranty].”), *report and recommendation adopted*, 2020 WL 3445730 (E.D.N.Y. June 24, 2020).   Accordingly, the existence of prior complaints by other consumers cannot satisfy the notice requirement for this suit.

Plaintiff’s failure to satisfy the pre-suit notice requirement is fatal to his breach of express warranty claim.  The Court therefore dismisses this claim with prejudice as well.

### 4.   Plaintiff’s Implied Warranty of Merchantability Claim Fails for Lack of Privity and Lack of Notice

To state a claim for breach of implied warranty of merchantability, Plaintiff must plead that a merchant seller breached its “guarantee . . . that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection.”  *Wojcik v. Empire Forklift, Inc.*, 783 N.Y.S.2d 698, 700-01 (App. Div. 2004).  “Liability for breach of warranty [of merchantability] depends on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners.”   *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 Civ. 1851 (NGG), 2006 WL 2524187, at *7 (E.D.N.Y. Aug. 30, 2006) (alterations in original) (internal quotation marks and citation omitted).[15]

Under New York law, a plaintiff must allege privity with the defendant for a claim of breach of an implied warranty.  *See e.g.*, *Sarr*, 2020 WL 729883, at *8; *Catalano v. BMW of N.

---

[15] The parties dispute how this standard applies in the context of consumer transactions concerning food products.  Defendant contends that when the claim involves the sale of food, the product must merely be fit for human consumption to meet the implied warranty.  *See* Motion to Dismiss at 19 (citing, *inter alia*, *Silva*, 2015 WL 5360022, at *11).  Plaintiff counters that Defendant breached the implied warranty of merchantability because the Product is not “capable of passing without objection in the trade under the contract description.”  Opposition at 18-19 (citing *Jackson v. Eddy’s LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 527 (E.D.N.Y. 2012)).  The Court need not resolve which standard applies because Plaintiff’s lack of privity with Defendant and failure to provide pre-suit notice preclude the claim.

*Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) ("Although New York has long since dispensed with the privity requirement for express warranty claims, New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warrant[y] of merchantability . . . where the only loss alleged is economic." (citations omitted)); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015); *Tomasino I*, 44 F. Supp. 3d at 262-63; *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.*, 858 N.Y.S.2d 405, 408 (App. Div. 2008) (finding that lack of privity "render[s] any claim of breach of implied warranties ineffective as a matter of law").[16]

The Complaint does not allege that privity of contract existed between Plaintiff and Defendant. Instead, Plaintiff pleads that "[t]he Product is available to consumers from retail and online stores *of third-parties*." Compl. ¶ 2 (emphasis added). At oral argument, Plaintiff's counsel further confirmed that Plaintiff "did not buy [the Product] directly from defendant[]." 2/18/21 Tr. at 30. This lack of an immediate transaction "renders [P]laintiff a remote purchaser who is barred as a matter of law from claiming economic damages due to [Defendant's] alleged breach of implied warrant[y]." *Arthur Glick Leasing, Inc.*, 858 N.Y.S.2d at 408.

The Court further finds that, like Plaintiff's breach of express warranty claim, his breach of implied warranty claim also fails for lack of pre-suit notice for the same reasons discussed above. *See Campbell*, 2021 WL 355405, at *13 (collecting cases holding that the notice requirement applies to claims for breach of implied warranty); *Richards*, 2018 WL 2976002, at

---

[16] A limited exception to the privity requirement exists for recovering personal injuries. *See e.g.*, *Colangelo v. Champion Petfoods USA, Inc.*, No. 18 Civ. 1228 (LEK), 2020 WL 777462, at *11 (N.D.N.Y. Feb. 18, 2020); *Gould v. Helen of Troy Ltd*, No. 16 Civ. 2033 (GBD), 2017 WL 1319810, at *5 (Mar. 30, 2017) ("Plaintiff does not seek to recover damages for her personal injuries, which is the only time privity is not required for implied warranty claims."); *Mahoney v. Endo Health Sols., Inc.*, No. 15 Civ. 9841 (DLC), 2016 WL 3951185, at *5 (S.D.N.Y. July 20, 2016); *Ross v. Alexander Mitchell & Son, Inc.*, 31 N.Y.S.3d 703, 704 (App. Div. 2016). Plaintiff does not seek to recover damages for personal injuries.

*8; *Tomasino I*, 44 F. Supp. 3d at 260-61.

The Court therefore dismisses Plaintiff's claim for breach of implied warranty with prejudice.

### 5. Plaintiff's Unjust Enrichment Claim is Duplicative

Lastly, Plaintiff brings a claim for unjust enrichment, on the theory that that "Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of [P]laintiff and class members." Compl. ¶ 71. To sufficiently plead unjust enrichment, a plaintiff must allege that "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) . . . it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (quoting *Baron*, 840 N.Y.S.2d at 448). "[A]n unjust enrichment claim cannot survive 'where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Id.* (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)). If "the unjust enrichment claim is duplicative," and "if plaintiff['s] other claims are defective, an unjust enrichment claim cannot remedy the defects." *Corsello*, 18 N.Y.3d at 791.

Plaintiff's unjust enrichment claim must be dismissed because it merely duplicates his other claims. The Complaint devotes two sentences to the unjust enrichment claim: "incorporat[ing] by reference all preceding paragraphs" and then stating that Defendant received profits to the "detriment and impoverishment of plaintiff and class members." Compl. ¶¶ 70-71. As Judge Woods explained when faced with identical pleading language in *Campbell*, "the unjust enrichment claim is a mere repackaging of [Plaintiff's] other claims based on the alleged misrepresentations on the Product's packaging." 2021 WL 355405, at *15; *accord Hesse*, 463 F. Supp. 3d at 474; *Pierce v. L'Oreal USA, Inc.*, No. 17 Civ. 614 (LGS), 2017 WL 4480887, at *5 (S.D.N.Y. Oct. 5, 2017) (dismissing unjust enrichment claim because "[a]ll of the claims in the

Complaint are based on the same alleged misrepresentation by Defendants"); *Sitt v. Nature's Bounty, Inc.*, No. 15 Civ. 4199 (MKB), 2016 WL 5372794, at *18 (E.D.N.Y. Sept. 26, 2016) ("Because Plaintiff's unjust enrichment claims under New York law are based on the same allegations as her claims of violations of GBL sections 349 and 350 and breach of express warranty under New York law, and because Plaintiff has not shown how her unjust enrichment claim differs from her other New York claims, Plaintiff's unjust enrichment claim under New York law is duplicative of her other New York claims.").

Accordingly, the Court dismisses Plaintiff's unjust enrichment claim with prejudice.

### III.  Conclusion

For the reasons discussed above, Defendant's motion to dismiss is granted in part and denied in part.  The Court denies Defendant's motion to dismiss as to Plaintiff's claims for damages under N.Y. G.B.L. §§ 349 and 350.  The Court grants the motion as to Plaintiff's claims for fraud, negligent misrepresentation, breaches of express and implied warranties, and unjust enrichment.  Because the Court finds that any amendment of these claims would be futile, they are dismissed with prejudice.  The Court further dismisses with prejudice Plaintiff's claim under the Magnuson-Moss Warranty Act and his request for injunctive relief, based on his counsel's representation at oral argument that Plaintiff is no longer pursuing these avenues for relief because they would lack merit in this case.  The Court will schedule an Initial Pretrial Conference by separate order.

The Clerk of Court is respectfully directed to close the motion pending on Docket Number 10.

SO ORDERED.

Dated: March 16, 2021
      New York, New York                                      JOHN P. CRONAN
                                             United States District Judge