UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                               :

MATTHEW COLPITTS, Individually and on Behalf of :
All Others Similarly Situated,                           :

                                         Plaintiff,                          :          20 Civ. 2487 (JPC)

                   -v-                                     :          OPINION AND ORDER

BLUE DIAMOND GROWERS,                        :

                                        Defendant.                      :

-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Claiming that Defendant Blue Diamond Growers' Smokehouse Almonds are misleadingly labeled, in violation of New York General Business Law sections 349 and 350, Plaintiff Matthew Colpitts seeks recovery both for himself and on behalf of a class of almond purchasers. Now before the Court are his motion for class certification and Defendant's motion for summary judgment, the latter of which argues that he has produced insufficient evidence to raise a genuine issue of fact as to multiple elements of a claim under the relevant sections of the General Business Law. Because the Court agrees with Defendant that Plaintiff has not produced sufficient evidence to raise a triable issue of fact as to whether he suffered an injury caused by the alleged mislabeling, Defendant's motion for summary judgment is granted, and Plaintiff's motion for class certification is therefore denied as moot.

### I. Background

A.   Facts[1]

Defendant is a California cooperative of almond growers. Deft. 56.1 Stmt. ¶ 1. It sells almond-based products, including a line of flavored almonds (the "Snack Almonds") that are made in a variety of flavors. *Id*. One Snack Almond flavor is the Smokehouse Almonds, *id.* ¶ 4, which has a smoky flavor that is imparted by a seasoning coating the almonds, not by exposure to actual smoke, *id.* ¶ 7. Defendant charges the same wholesale price for each flavor of Snack Almonds it sells, although two flavors, the Dark Chocolate Cocoa Dusted Almonds and the Toasted Coconut Almonds, are sold for the same price as the other flavors, but in a smaller size. *Id.* ¶¶ 14-16. When making direct sales to consumers, Defendant similarly charges the same price for each flavor of Snack Almonds. *Id.* ¶¶ 21-22. And while Defendant does not control the prices charged to consumers by retailers that purchase Snack Almonds at wholesale prices, many retailers, including Duane Reade, charge the same price for each flavor of Snack Almonds. *Id.* ¶ 19. In addition, market research indicates that the average price of the Smokehouse Almonds between 2017 and 2021 was lower than the average price of Planters Smoked Almonds, *id.* ¶ 27, which Plaintiff identifies as a comparable product that is not misleadingly labeled, Dkt. 1 ("Compl.") ¶ 20.

Plaintiff is a consumer of Defendant's almonds in general—he has "bought many Blue Diamond products generally . . . and for quite a long time"—and of the Smokehouse Almonds in particular, which he has bought approximately thirty to forty times over a period of eight years.

---

[1] These facts are drawn from paragraphs 1 through 48 of Defendant's statement of undisputed material facts under Local Civil Rule 56.1(a), Dkt. 85 ("Deft. 56.1 Stmt."). Plaintiff's counter-statement under Rule 56.1(b) consists solely of the objection that paragraphs "49 through 61 [of Defendant's 56.1 statement] are not supported by admissible evidence." Dkt. 90 ("Pl. 56.1 Stmt.") at 1. Plaintiff thereby admits the remaining paragraphs of Defendant's Rule 56.1 statement. *See* Local Civil Rule 56.1(c).

Deft. 56.1 Stmt. ¶¶ 29-31.  His purchases of the Smokehouse Almonds continued at least through the first few months of 2021, following his initiation of this lawsuit.  *Id.* ¶ 31.  Some of those purchases occurred at a Duane Reade located on Wall Street in New York City.  *Id.* ¶ 32.  The remaining purchases occurred at convenience stores or similar establishments, but Plaintiff cannot recall the exact names or locations of those retailers.  *Id.* ¶ 33.  Plaintiff does not have receipts from any of his purchases, and he cannot recall the price he paid on any of those occasions.  *Id.* ¶¶ 36-37.  He buys the Smokehouse Almonds because he "like[s] the flavor," which he finds to be "quite good."  *Id.* ¶ 39.  Even after learning that the smoky flavor of the Smokehouse Almonds was applied through a seasoning that coats the almonds, rather than through actual smoke, Plaintiff continued to enjoy their "great" and "yummy" flavor.  *Id.* ¶ 44.

**B.      Procedural History**

Plaintiff filed the Complaint that initiated this action on March 22, 2020.  Dkt. 1.  In it, he brought claims for violations of sections 349 and 350 of the General Business Law; for negligent misrepresentation; for breaches of express warranties, of the implied warranty of merchantability, and of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*; for fraud; and for unjust enrichment.  *Id.* ¶¶ 43-71.  The Complaint further contained class allegations related to a proposed class consisting of all purchasers of the Smokehouse Almonds in the fifty States of the United States during the relevant statutes of limitations.  *Id.* ¶¶ 35-42.  On September 11, 2020, Defendant moved to dismiss the Complaint, Dkts. 10-11, arguing that Plaintiff lacked standing to bring this action under Article III of the United States Constitution, and that the allegations in the Complaint failed to state a claim upon which any theory of relief pled could be granted.  *See generally* Dkt. 11.  In an Opinion and Order dated March 16, 2021, the Court found that Plaintiff did have Article III standing and held that the Complaint stated a claim for a violation of sections 349 and 350 of

the General Business Law, but dismissed all remaining causes of action as being inadequately pled. *See generally* Dkt. 40. Following the close of discovery, *see* Dkt. 65, Plaintiff moved on April 15, 2022 to certify a class consisting of all New York consumers who purchased the Smokehouse Almonds on or after March 22, 2017. Dkts. 67-68. Defendant opposed that motion on June 24, 2022, Dkts. 75-77, and Plaintiff replied on July 29, 2022, Dkt. 79.

On August 12, 2022, Defendant moved for summary judgment on Plaintiff's claims for violations of sections 349 and 350 of the General Business Law. Dkts. 80-85. Plaintiff opposed that motion on October 14, 2022. Dkts. 89-90. As an exhibit to his memorandum of law, Plaintiff attached a declaration from Andrea Lynn Matthews (the "Matthews Declaration"), a marketing professor who had conducted a survey as to how consumers perceive the source of the smoke flavor of the Smokehouse Almonds and who proposed to conduct a study as to how the source of a product's smoky flavor affects the value consumers assign to it. *See generally* Dkt. 89-1. Defendant moved to strike the Matthews Declaration on December 2, 2022, Dkts. 95-97, arguing, *inter alia*, that its use in opposition to the motion for summary judgment was precluded by Rule 37(c)(1), given Plaintiff's failure to identify Matthews as an expert witness during discovery. *See generally* Dkt. 96. On January 5, 2023, Plaintiff opposed the motion to strike, Dkt. 100, and on January 23, 2023, Defendant replied, Dkt. 101. At a conference held on January 27, 2023, the Court granted the motion to strike. *See* Minute Entry dated Jan. 27, 2023. Plaintiff then filed a renewed opposition to summary judgment on February 3, 2023, Dkt. 103 ("Pl. Opp."), and Defendant replied on February 17, 2023, Dkt. 106.

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4

56(a).  "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

On a motion for summary judgment, the moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  "If the moving party meets its initial burden, the nonmoving party must then 'set forth specific facts showing that there is a genuine issue for trial' using affidavits or other evidence in the record, and cannot rely on the 'mere allegations or denials' contained in the pleadings."  *Taylor v. City of New York*, No. 19 Civ. 6754 (KPF), 2022 WL 744037, at *6 (S.D.N.Y. Mar. 11, 2022) (quoting *Anderson*, 477 U.S. at 248); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("[A] nonmoving part[y] . . . may not rely on conclusory allegations or unsubstantiated speculation . . . [and] must offer some hard evidence showing that its version of the events is not wholly fanciful." (internal quotation marks omitted)).

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought."  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).  At the same time, however, "in considering what may reasonably be inferred from witness testimony, the court should not accord the nonmoving party the benefit of unreasonable inferences,

or inferences at war with undisputed facts." *Taylor*, 2022 WL 744037, at *7 (internal quotation marks omitted).

### III. Discussion

Section 349 of the New York General Business Law declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. L. § 349(a). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service*." Id*. § 350. Both are aimed at conduct that is deceptive—*i.e.*, conduct "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995). Thus, "[t]he standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002). Under either, a plaintiff "must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000). Defendant argues that it is entitled to summary judgment because Plaintiff cannot prove the third of these elements. Dkt. 81 ("Deft. Br.") at 16-19. The Court agrees.[2]

In his briefing, Plaintiff responds to this argument primarily by pointing to the availability of statutory damages under sections 349 and 350 of the General Business Law. Pl. Opp. at 9 ("New York law does not require that . . . actual damages or a price premium be proven with a

---

[2] Defendant also argues that Plaintiff has produced insufficient evidence to show that the labeling of the Smokehouse Almonds was misleading in a material way. Deft. Br. at 11-16. Because the Court concludes that Defendant is entitled to summary judgment based on Plaintiff's inability to prove actual injury, however, this Opinion and Order will not address the question of whether the Smokehouse Almonds are labeled in a materially misleading way.

6

specified degree of certitude given the GBL's statutory minimum damages. Instead, Plaintiff and class members may elect to recover $50 and $500 . . . ." (brackets, internal quotation marks, and citation omitted)). But while Plaintiff is correct that the two sections do authorize that remedy, *see* N.Y. Gen. Bus. L. § 349(h) (authorizing "an action to recover . . . actual damages or fifty dollars, whichever is greater"); *id.* § 350-e(3) (authorizing "an action to recover . . . actual damages or five hundred dollars, whichever is greater"), the question of remedies is distinct from the question of liability. Before a plaintiff can recover any damages, whether they be actual or statutory damages, he must first establish each element of his cause of action, and the New York Court of Appeals has explicitly and unambiguously stated that "a plaintiff must prove 'actual' injury to recover under the statute." *Stutman*, 731 N.E.2d at 612. Indeed, the statutes themselves explicitly provide that only those who actually suffer injury are entitled to recover either actual or statutory damages. *See* N.Y. Gen. Bus. L. § 349(h) ("[A]ny person *who has been injured* by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." (emphasis added)); *id.* § 350-e(3) ("Any person *who has been injured* by reason of any violation of section three hundred fifty or three hundred fifty-a of this article may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions." (emphasis added)). The cases Plaintiff cites, *see* Pl. Opp. at 10, do not hold differently. *See, e.g.*, *Guido v. L'Oreal, USA, Inc.*, Nos. 11 Civ. 1067 (CAS) (JCx), 11 Civ. 5465 CAS (JCx), 2013 WL 3353857, at *17 (C.D. Ca. July 1, 2013) ("Under N.Y. G.B.L § 349(h), a plaintiff can recover statutory damages in the amount of $50 *upon a finding that the plaintiff has suffered injury*." (emphasis

added)).  Thus, despite the availability of statutory damages, Plaintiff must still prove that he suffered an actual injury as a result of Defendant's allegedly deceptive practices.

In his briefing, Plaintiff does not claim that a reasonable factfinder could conclude, based on the evidence he has produced, that he has suffered an injury.  This failure alone would justify the Court in concluding that Plaintiff has conceded Defendant's argument that the evidence is insufficient to prove such an injury.  *See, e.g.*, *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (finding an argument "concede[d] through silence" when the plaintiff did not address it in his opposition brief), *aff'd*, 752 F.3d 173 (2d Cir. 2014).  In any event, Defendant is plainly correct that Plaintiff has produced no evidence showing that he suffered an actual injury.

A plaintiff suffers actual injury if, "on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase."  *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020) (internal quotation marks omitted).  This standard is satisfied by "an overpayment, or price premium, whereby a plaintiff pays more than she would have but for the deceptive practice."  *Id.* (internal quotation marks omitted).  In opposing Defendant's motion to dismiss, Plaintiff argued that the Complaint adequately pled an actual injury by alleging that he paid a price premium for the Smokehouse Almonds.  *See* Dkt. 14 at 14 (collecting cases holding that the allegation that a price premium was paid is sufficient to adequately plead actual injury).  And the Complaint does, in fact, allege that he paid such a premium.  *See* Compl. ¶ 21 (alleging that, due to Defendant's mislabeling, "reasonable consumers will purchase [the Smokehouse Almonds] instead of similar products at their higher premium price"); *id.* ¶ 22 ("Had plaintiff . . . known the truth, [he] would not have bought [the Smokehouse Almonds] or would have paid less for [them]."); *id.* ¶ 24 ("[The Smokehouse Almonds are] sold

at a premium price, approximately no less than $2.79 per 1.5 OZ, excluding tax, compared to other similar products represented in a non-misleading way."); *id.* ¶ 49 ("Plaintiff . . . would not have purchased the [Smokehouse Almonds] or paid as much if the true facts had been known.").[3]

Plaintiff has produced no evidence, however, to substantiate these allegations. He has not substantiated his allegation that he personally paid a premium for the Smokehouse Almonds, since he has produced no evidence as to the price he paid for them on any occasion when he purchased them. Deft. 56.1 Stmt. ¶¶ 36-38. And he has not substantiated his allegation that reasonable consumers are willing to pay a higher price for the Smokehouse Almonds due to their alleged mislabeling, since the record contains no evidence whatsoever as to how the source of smoky flavoring affects the market price of flavored foods. *See generally, e.g.*, Pl. 56.1 Stmt.; Deft. 56.1 Stmt. Indeed, the only relevant evidence in the record suggests that the Smokehouse Almonds do not command a price premium. Defendant charges the same wholesale and retail price for them as for other flavors of the Snack Almonds. Deft. 56.1 Stmt. ¶¶ 14-16, 20-22. Many retailers similarly charge consumers the same price for the Smokehouse Almonds as for other flavors of the Snack Almonds. *Id.* ¶ 19. And Planters Smoked Almonds—which Plaintiff identifies in the Complaint as a comparable product that is not misleadingly labeled, Compl. ¶ 20—are in fact sold

---

[3] These allegations also suggest an alternative theory of actual injury—that Plaintiff was injured simply by paying money to purchase almonds whose flavor resulted from seasoning rather than smoking, which he would not have done but for Defendant's alleged mislabeling. The New York Court of Appeals, however, has explicitly held that merely purchasing a mislabeled product is not an injury under section 349 or section 350 of the General Business Law absent further proof that the purchase in some way injured the plaintiff. *Small v. Lorillard Tobacco Co. Inc.*, 720 N.E.2d 892, 898 (N.Y. 1999) ("[The plaintiffs] posit that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under General Business Law § 349. We disagree."). A plaintiff must show not just that "on account of a materially misleading practice, she purchased a product," but also that she "did not receive the full value of her purchase." *Duran*, 450 F. Supp. 3d at 350 (internal quotation marks omitted).

for a higher price than the Smokehouse Almonds, Deft. 56.1 Stmt. ¶ 27, indicating that any mislabeling that may have occurred did not enable Defendant to sell its product for a higher price. Courts in this District have granted defendants summary judgment when faced with records that similarly lacked evidence of a price premium. *See, e.g.*, *Housey v. Proctor & Gamble Co.*, No. 21 Civ. 2286 (NRB), 2022 WL 874731, at *8 (S.D.N.Y. Mar. 24, 2022) (holding that no price premium was alleged when the allegedly mislabeled product was sold for the same price as other variants of the same product lacking the allegedly deceptive label), *aff'd*, 2022 WL 17844403 (2d Cir. Dec 22, 2022); *Segovia v. Vitamin Shoppe, Inc.*, No. 14 Civ. 7061 (NSR), 2017 WL 6398747, at *4 (S.D.N.Y. Dec. 12, 2017) (granting summary judgment when "Plaintiff did not provide the prices of competing products for comparison");[4] *Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742 (DLC), 2011 WL 196930, at *3 (S.D.N.Y. Jan. 21, 2011) (granting summary judgment when the plaintiffs were "unable to establish the actual price they paid for the Snapple products at issue . . . [and] offered no evidence of the prices of competing or comparable beverages that did not contain the alleged mislabeling").

For similar reasons, no reasonable factfinder could conclude from the evidence in the record that Plaintiff has established that he paid a price premium for the Smokehouse Almonds. And because none of his submissions identify any other viable theory of actual injury, nor indicate how the evidence in the record would enable him to establish that he suffered such an injury, an

---

[4] In *Segovia*, the court also observed that the plaintiff did not "testify at any point in his deposition that but for Defendant's lactase-specific claims, he would have been unwilling to pay Defendant's price." 2017 WL 6398747, at *4. As discussed, however, *see supra* note 3, such evidence would not on its own establish actual injury, since a consumer's purchase of goods he would not otherwise have bought is not on its own an injury entitling him to compensation under section 349 or section 350 of the General Business Law. *See Small*, 720 N.E.2d at 898.

element he must prove to succeed on a claim under section 349 or section 350 of the General Business Law, Defendant is entitled to summary judgment.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is granted. With that motion granted, Plaintiff's motion for class certification is denied as moot. Because the Court concludes that oral argument in this case is not necessary, Defendant's request for oral argument, Dkt. 86, is denied. The Clerk of Court is respectfully directed to terminate the motions pending at Docket Numbers 67, 80, and 86, to enter judgment in favor of Defendant, and to close this case.

SO ORDERED.

Dated: March 31, 2023
New York, New York

                                                JOHN P. CRONAN
                                        United States District Judge